# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 9:20-cv-80898-WPD

EDWARD QUIDERA and JEREMY CAVOLO,
Individually and on behalf of others similarly situated,

      Plaintiffs,

  v.

BLACKSTONE LABS, LLC,

      Defendant.

_____/

### DEFENDANT BLACKSTONE LABS, LLC'S
### FED R. CIV. PRO. 12 (b)(6) MOTION TO DISMISS
_____

## I.    INTRODUCTION

Plaintiffs' claims for relief, if valid, would usurp the Food and Drug Administration's authority to regulate dietary supplements under the Federal Food, Drug, and Cosmetic Act ("FDCA") 21 U.S.C. § 393(b)(2) and the Dietary Supplement Health and Education Act ("DSHEA"), Pub. L. No, 103-417, 108 Stat. 4325. Plaintiffs' allege that certain dietary supplements manufactured by Defendant Blackstone Labs, LLC ("Defendant" or "Blackstone") are adulterated because they contain DMHA, which Plaintiffs claim is an illegal ingredient. Compl. ¶ 2 (ECF No. 1). Importantly, however, the FDA has not deemed DMHA illegal, as was recently held in *Hi-Tech Pharm., Inc. v. Hahn*, No. 19-1268-RBW (D.D.C. 2019).

Plaintiffs' claims are also preempted by the FDCA, which does not confer a private right of action. Plaintiffs do not claim that they were injured or suffered any ill effects as a result of ingesting any of Blackstone's products. Instead, all of their claims are premised on Blackstone's alleged violation of the FDCA and DSHEA. There can be no recovery absent a violation of the FDCA and DSHEA (selling a supplement containing DMHA does not violate the CLRA, UCL, NY General Business Law, or the common law). Here, FDA has not taken action against Blackstone and has not made a final determination regarding the legality of DMHA. Accordingly, Plaintiffs' claims are preempted and should be dismissed.

Plaintiffs' claims also fail because they lack standing, have not suffered an injury in fact, and because Plaintiffs have failed to sufficiently plead either common law fraud or a violation of the California or New York consumer protection statutes. Alternatively, if this Court is not inclined to grant Blackstone's motion to dismiss or stay, it moves, pursuant to Fed. R. Civ. P. 12(b)(2), to strike the nationwide class allegations.

## II.   STATEMENT OF RELEVANT FACTS

### A.   The Parties

Blackstone is a Florida limited liability company. Blackstone sells dietary supplements throughout the United States. Compl., ¶ 13. Plaintiff Quidera is a resident of California and alleges that he purchased Dust X from Athlete's Nutrition in the summer of 2018. *Id.*, ¶ 11. Plaintiff Cavolo is a resident of New York who claims that he purchased Dust X online from his residence several times. *Id.*, ¶ 12.

### B.   DMHA and Its Legal Status Under DSHEA

DMHA's presence in a dietary supplement is governed by the FDCA as amended by DSHEA. *See* Compl., ¶¶ 22-63. Neither the FDCA nor DSHEA provide for a private right of action. On the contrary, the FDCA expressly provides that enforcement authority is reserved to the federal government. *See, e.g.*, 21 U.S.C. § 337(a). The FDA's regulations make explicit the FDA's primary jurisdiction:

> FDA has primary jurisdiction to make the initial determination on issues within its statutory mandate, and will request a court to dismiss, or hold in abeyance its determination of or refer to the agency for administrative determination, any issue which has not previously been determined by the agency.

21 C.F.R. § 10.25(b).

Plaintiffs' claims rely upon the issuance and content of warning letters sent by the FDA in April of 2019 concerning DMHA to a third party. Compl., ¶ 8, 36, 41, 46, Exh. A to Compl. The warning letter sent to Hi-Tech Pharmaceuticals, Inc., which constitutes Plaintiff's "Exhibit A," formed the basis for Hi-Tech's subsequent complaint in the District Court for the District of Columbia challenging the FDA's *de facto* attempt to ban DMHA without engaging in the proper administrative rule-making process. *Hi-Tech Pharm., Inc., et al. v. Hahn, Comm'r of the Food & Drug Admin., et al.*, Case No. 1:19-cv-1268 (D.D.C.) (the "DC Action").

The District Court for D.C. granted the FDA's motion to dismiss this complaint, accepting the FDA's arguments that "the DMHA Warning Letter does not represent final agency action subject to review" and "plainly does not mark the consummation of FDA's decision making." *Hi-Tech Pharm., v. Hahn*, 2020 WL 349588, at *5 (D.C.C. June 29, 2020). In doing so, the court reasoned that FDA warning letters do not "'represent a decision determining rights or obligations, or one from which legal consequences flow.'" *Id.* (quoting *Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 944 (D.C. Cir. 2012)).

### C. Legal Standard

When evaluating a motion to dismiss for failure to state a claim under Federal Rule of Procedure 12(b)(6), courts "begin by identifying conclusory allegations in the Complaint." *Mamani v. Berzain*, 654 F.3d 1148, 1152-53 (11th Cir. 2011). "Legal conclusions without adequate factual support are entitled to no assumption of truth." *Id.* The court must therefore strip away "the complaint's conclusory legal allegations and then determin[e] whether the remaining well-pleaded factual allegations, accepted as true, plausibly give rise to an entitlement to relief." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). The court "must examine what th[e] complaint says the[] defendant[] did—in non-conclusory factual allegations." *Mamani*, 654 F.3d at 1152.

## III. ARGUMENT

### A. The FDA Has Primary Jurisdiction Over Whether DMHA Is A Legal Dietary Ingredient and Has Not Made A Final Determination Regarding Its Legal Status.

Plaintiffs' claim that Blackstone's supplements containing DMHA are:

- Misbranded under 21 U.S.C. § 343(a);
- Adulterated under 21 U.S.C. § 342(f)(1)(b);
- Not legal for sale as a Dietary Supplement under 21 U.S.C. § 331(a);
- Unsafe and adulterated under 21 U.S.C. § 331(v); and
- Not legal for sale because it includes an article approved as a drug for which clinical trials have [sic] been made public under 21 U.S.C. § 331 (11).

Compl. ¶ 54. All of these allegations rest on Plaintiffs' conclusion that DMHA is "illegal." Compl. ¶ 8 ("The FDA has made its position on DMHA clear: It is illegal."). The FDA, however, has not in fact made that determination, as the District Court of Columbia's decision in *Hi-Tech Pharm., Inc. v. Hahn*, makes clear. Absent a final determination by the FDA that DMHA is illegal, and that products containing DMHA are adulterated, Plaintiffs' Complaint falls within the primary jurisdiction of the FDA and should be dismissed or stayed.

As this Court recently explained:

> Courts consider four factors when applying the primary jurisdiction doctrine: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration. The four factors are not exclusive, and courts seem heavily influenced by a fifth factor in cases implicating FDA jurisdiction: whether the FDA has shown any interest in the issues presented by the litigants.

*Snyder v. Green Roads of Fla.*, 430 F.Supp.3d 1297, 1307-08 (S.D. Fla. 2020) (citation omitted).

When applying these factors in the context of cannabidiol ("CBD") products, this Court found that: (1) the FDA was exercising authority over such products, but that "there is uncertainty with respect to whether the FDA will conclude that some or all CBD products are food additives, supplements or nutrients that can be safely marketed to the public" (precisely as the FDA is exercising authority over DMHA, but has left uncertainty by not taking final agency action); (2) the FDA, as in this case, is properly exercising its regulatory authority over "food additives, supplements and nutrients"; (3) the Agriculture Improvement Act of 2018, like DSHEA in this case, explicitly recognizes the FDA's authority to regulate the subject product; and (4) as in the current case, "the exercise of regulatory authority by the FDA … requires both expertise and uniformity in administration" a evidenced by the existence of safety issues. *Id.* at 1308. The Court, therefore, stayed the case pending the FDA's completion of relevant rulemaking. *Id.* at 1309.

The Southern District of California addressed this issue in *Aaronson v. Vital Pharmaceuticals, Inc.*, 2010 WL 625337, *2 (S.D. Cal. Feb. 17, 2010). In *Aaronson*, the plaintiff alleged that the defendant wrongly promoted a variety of energy drinks as "safe and healthy dietary supplement[s]" while failing to warn the public of the dangers and health risks associated with using the products. *Id.* at *2. The plaintiff claimed that several of the key ingredients used in the products (Yohimbine, Vinpocetine, Tyrosine, and 5-Hydroxytryptophan) were not safe and cited numerous studies that the plaintiff claimed demonstrated the dangers of the ingredients. *Id.* The District Court granted Vital Pharmaceuticals' motion to dismiss on primary jurisdiction grounds, holding:

> [T]he Dietary Supplement Health and Education Act of 1994 (DSHEA) provides that the supplement manufacturer is responsible for ensuring that a supplement is safe before it is marketed and the FDA is responsible for taking action against an unsafe supplement after it reaches the market. Dietary Supplement Health and Education Act of 1994. Pub. L. No. 103-417, 108 Stat. 4325 . . . Because Redline is already on the market, DSHEA makes the FDA responsible for its regulation. Accordingly, the FDA has both the expertise and the authority to determine whether Redline is safe, and the Court believes the FDA is in the better position to make that determination.

*Id.* at *2.

The same is true here. Whether DMHA is a new dietary ingredient under DSHEA and whether products containing DMHA are safe require the evaluation of conflicting scientific evidence and are issues within the primary jurisdiction of the FDA. When faced with the similar question of whether a product constituted a food or a drug under the FDCA, the Ninth Circuit determined that the FDA had primary jurisdiction to decide the issue and affirmed the dismissal of the plaintiffs' complaint. *See Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1376-77 (9th Cir. 1983). As the Ninth Circuit recognized, courts should decline to substitute their opinion for that of the FDA or "review anything less than a final administrative determination on the classification of a product as a drug, biological product or food." *Id.* at 1377 (emphasis added). Plaintiffs' Complaint asks this Court to tread where the Ninth Circuit said it should not and assume regulatory powers in

the complex areas of product and ingredient classification. This Court should decline that invitation.

The District Court's decision in *Braintree Laboratories, Inc. v. Nephro-Tech, Inc.*, 1997 WL 94237 (D. Kan. Feb. 26, 1997) is also instructive. In that case, the plaintiff brought claims for unfair competition and violation of the Lanham Act against the defendant premised on the defendant's marketing a product called Caphron as a dietary supplement, which the plaintiff claimed was false and misleading. Defendant moved to dismiss because the plaintiff had merely alleged a misbranding violation and evaluation of the plaintiff's claims would require application and interpretation of the FDCA definition. *Id.* at *7. The district court agreed, holding that because the plaintiff's claims required a determination of whether the defendant's product was a "drug" rather than a "dietary supplement" and "[s]uch a claim would require direct interpretation and application of the FDCA," it was more appropriately addressed by the FDA, especially in light of Congress's intention to repose in that body the task of enforcing the FDCA." *Id.* at *6, 8.

The District Court for the Eastern District of California reached the same conclusion more recently in *Luman v. NAC Marketing Company*, LLC, 2017 WL 3384117 (E.D. Cal. Aug. 8, 2017). There, the district court dismissed on primary jurisdiction grounds the plaintiff's complaint because it alleged that defendant's product was misbranded as a dietary supplement. *Id.* at *4. As the *Luman* court noted:

> Here, all of [plaintiff's] claims rely on the court's resolving one primary question: whether Super Beta Prostate is properly characterized as a "new drug" under the FDCA rather than as a "dietary supplement" . . . Determining whether a product is properly characterized as a "new drug" requires the FDA's expertise . . . Accordingly, "where no administrative determination has been made and the issue arose in the district court it would be commonplace for the court to await an appropriate administrative decision before it acted."

*Id.* (quoting *Weinberger v. Bentex Pharm., Inc.*, 412 U.S. 645, 652 (1973)).

Likewise, now that the District Court for the District of Columbia has issued its decision in *Hahn*, there can be no dispute that the FDA has not made a final determination regarding whether DMHA is a lawful dietary ingredient. Plaintiffs' case is premised on their allegation that DMHA is an unlawful dietary ingredient. If this case proceeds, this Court or a jury will have to determine whether supplements containing DMHA are: (1) misbranded under 21 U.S.C. § 343(a); (2) adulterated under 21 U.S.C. § 342(f)(1)(b); (3) not legal for sale under 21 U.S.C. § 331 (a); (4) unsafe and adulterated under 21 U.S.C. § 350(b); (5) prohibited for sale under 21 U.S.C. § 331(v) and (6) not legal for sale under 21 U.S.C. § 331 (11). *See* Compl. ¶ 54. Each of the foregoing will require direct interpretation and application of the FDCA and is more appropriately addressed to the FDA.

**B.    Plaintiffs' Claims Are Preempted by the FDCA.**

The FDCA cannot be enforced by private citizens. Congress provided a number of remedies for FDA enforcement in 21 U.S.C. §§ 332-335. Congress was express that these enforcement proceedings – whether for injunction, seizure of products, or penalties – could only be pursued by the federal government: "Except as provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States . . ." 21 U.S.C. § 337(a). This provision "leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with FDCA requirements." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (1991).

Not only are private claims under the FDCA expressly forbidden, but courts have resoundingly rejected parallel state law claims that exist solely by virtue of FDCA requirements. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n. 4 (2001); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 487 (1996); *Ellis v. C.R. Bard, Inc.* 311 F.3d 1272 fn. 10 (11th Cir. 2002); *Bailey v. Johnson*, 48 F.3d 965, 968 (6th Cir. 1995) (holding that "Congress did not intend, either expressly or by implication, to create a private cause of action under the FDCA."). Plaintiffs' claims here are an

attempt to evade the FDA's exclusive enforcement authority under section 337 of the FDCA by burying FDCA regulated conduct in state-law causes of action. As the Middle District of Florida explained in *Marmol*:

> [I]n addition to express preemption articulated under § 360k(a), the FDCA includes an implicit preemption provision requiring that any action "for the enforcement, or to restrain violations" of the FDCA be brought "by and in the name of the United States." Although "citizens may report wrongdoing and petition the [FDA] to take action," there is no private right of action under the FDCA.
>
> Express preemption and implied preemption provide a "narrow gap" through which a plaintiff's claims must fit in order to survive. In other words, a plaintiff "'must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman* ).'

*Marmol v. St. Jude Medical Ctr.*, 132 F.Supp.3d 1359, 1364 (M.D. Fla. 2015)(internal citations omitted). Other circuits have reached similar conclusions. Applying section 337 in *Perez v. Nidek Co.*, 711 F.3d 1109 (9th Cir. 2013), the Ninth Circuit affirmed a judgment of the Southern District of California dismissing a state law claim that, like Plaintiffs', sought private enforcement of FDCA statutes and regulations. Where a state law claim "exist[s] solely by virtue of the FDCA . . . requirements," it is preempted:

> The plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).

*Perez*, 711 F.3d at 1120 (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1205 (8th Cir. 2010)). In *Perez*, the plaintiff claimed to be bringing a state law fraud-by-omission claim, asserting that defendants misled the proposed class "by failing to disclose that [a medical device laser] was not FDA approved for [a particular type of surgery]." *Id.* at 1117. The claim was preempted because it existed only "because of" the FDA approval system: "Like the fraud-on-the-FDA claims in *Buckman*, Perez's fraud by omission claim 'exist[s] by virtue of the

FDCA … requirements,' with respect to approved use of the Laser. As in *Buckman*, 'the existence of these federal enactments is a critical element in their case.'" *Id.* at 1119.

Like the state law claims in *Perez*, *Medtronic*, and *Buckman*, Plaintiffs' state law claims for violation of the CLRA, UCL, NY General Business Law, and common law claims for breach of implied warranty of merchantability, fraud, and unjust enrichment are all preempted because they are dependent on FDCA and FDA regulations: "the existence of these federal enactments is a critical element in their case." *Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1228 (9th Cir. 2013) (en banc). Importantly, Plaintiffs do not contend that they, or anyone else, were injured or suffered any harm as a result of ingesting Blackstone's products containing DMHA. Instead, Plaintiffs claim that they purchased a product they would not have otherwise purchased because "DMHA is illegal" and therefore Blackstone's supplements containing DMHA are misbranded, adulterated, and unsafe. Compl., ¶¶ 2, 53, 54. Put another way, Plaintiffs' state law claims fail the basic *Perez* test for preemption because none of them give rise to recovery in the absence of a violation of the FDCA. Because these claims are entirely dependent on alleged violations of the FDCA, they are preempted and should be dismissed.

### C.      Plaintiffs Lack Standing to Pursue Their Claims

To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs bear the burden of "clearly alleg[ing] facts demonstrating each element." *Id.*

### 1.      Plaintiffs Have Not Alleged an Injury-In-Fact

Plaintiffs' damages are based on an overpayment theory; *i.e.*, had they known the products they purchased contained "unsafe and illegal" DHMA, they would not have purchased them. *See,*

*e.g.,* Compl., ¶¶ 11-12. These assertions do not establish an injury-in-fact. Not only have the Plaintiffs failed to allege that the products did not perform as advertised, Plaintiffs allege no instance of actual harm to any user of the products. Standing cannot be supported by Plaintiffs' conclusory allegations of overpayment and so the Complaint must be dismissed.

Plaintiffs' allegations are akin to those made by the plaintiffs in *Boysen v. Walgreen Co.*, No. 11-cv-06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012). As in *Boysen*, Plaintiffs' allegations that they were denied the "benefit of the bargain" fail to establish Article III standing. Here, Blackstone's alleged failure to disclose the purported "illegality" of DMHA led to Plaintiffs' economic injury. Compl., ¶¶ 11-12. Like the plaintiff in *Boysen*, Plaintiffs do not allege that they have suffered any physical injury, or that the products failed to work as advertised. Plaintiffs similarly have alleged no risk of future harm or injury. Plaintiffs' theory of economic harm here cannot confer Article III standing upon them. *Boysen*, 2012 WL 2953069, at *5-6; *see also In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 272-73 (E.D. Pa. 2012) (plaintiffs lacked standing where they claimed they had overpaid for drugs because of quality-control problems, but had not experienced problems with the drugs and could not point to any injury that affected them "in a personal and individual way").

### 2.    Quidera Lacks Standing to Bring UCL and CLRA Claims.

The UCL and CLRA both require a plaintiff to demonstrate standing. *See generally Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323-27 (2011) (discussing standing under the CLRA and UCL); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009) (discussing standing under the CLRA). Quidera has failed to allege facts plausibly demonstrating that he relied on a misrepresentation by Defendant.

Standing under the CLRA requires a plaintiff to allege that he relied on the defendant's purported misrepresentation and suffered economic injury. *Kwikset*, 51 Cal. 4th at 326 ("The phrase

'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation.") (citations omitted). California courts have extended this reliance requirement to claims under the unlawful prong of the UCL based, as here, on allegations of misrepresentation and deception. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010). To have standing under the UCL, a plaintiff must have "suffered injury in fact and [have] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Here, Quidera makes no reliance allegations under his UCL and CLRA causes of action, but makes boilerplate and conclusory allegations under his fraud cause of action that he "relied on Defendant's representations, including that the Supplements were 'Dietary Supplement[s],'" and "would not have purchased or used the products" but for that claim. Compl., ¶ 115. However, Plaintiffs admit that they did not know that DMHA was purportedly unsafe when they purchased the supplements (*see id.*, ¶¶ 11-12); consequently, the presence of DMHA in the supplements or the "Dietary Supplements" statement could not have been material to their purchasing decision. Accordingly, Plaintiffs have failed to allege they purchased the Supplements "as a result of" Blackstone's "Dietary Supplements" statement and lack standing to bring the UCL labeling claims or CLRA claims. *Kwikset*, 51 Cal. 4th at 326-27; *Yastrab v. Apple Inc.*, 2015 WL 1307163, at *5-6 (N.D. Cal. Mar. 23, 2015).

### 3.   Plaintiffs Lack Article III Standing to Challenge Supplements Not Purchased.

Plaintiffs lack standing to pursue claims for products they have not purchased and thus their claims based on supplements other than Dust X must be dismissed. *See, e.g., Ohio State Troopers Ass'n, Inc. v. Point Blank Entertprises, Inc.*, 347 F.Supp.3d 1207 (S.D. Fla. 2018) ("[A] party does not have standing to bring a claim for a product he or she did not purchase…"); *Snyder v. Green Roads of Florida, LLC*, 430 F.Supp.3d 129, 1303 (2020) (collecting cases).

Plaintiffs purport to represent a class of purchasers of a number Arson, a product Plaintiffs did not purchase. *Compare* Compl., ¶ 1, *with* ¶¶ 11-12. Plaintiffs lack standing as to the supplements other than Dust X and their claims based on these other supplements must be dismissed.

### 4.      Plaintiffs Lack Article III Standing to Represent a Nationwide Class.

A federal court with diversity jurisdiction must look the choice of law rules of the forum state. *Union Capital Partners,* 92 F.3d 1110, 1115 (11th Cir.1996) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)). Florida's choice of law rules provide that each plaintiff is governed by the law of the state where the transaction occurred. *Berry v. Budget Rent A Car Systems, Inc.*, 497 F.Supp.2d 1361, 1365–66 (S.D. Fla. 2007); *David v. American Suzuki Motor Corp.*, 629 F.Supp.2d 1309, 1316–17 (S.D. Fla. 2009). Within this framework, this Court has previously held that it was "unpersuaded to depart from this District's precedent" establishing that "[a] named plaintiff lacks standing to assert legal claims on behalf of a putative class *pursuant to state law* under which the named plaintiff's own claims do not arise." *In re Takata Airbag Prod. Liab. Litig.*, 2016 WL 1266609, at *4–5 (emphasis added) (citing *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp.2d 1365, 1371 (S.D. Fla. 2001); *In re Checking Account Overdraft Litig.* 694 F. Supp. 2d 1302, 1324–25 (S.D. Fla. 2010)); *accord In re Takata Airbag Prod. Liab. Litig.*, 2020 WL 2764196, at *23 (S.D. Fla. 2020) (finding "no reason to wait until the class certification stage" to decide this standing issue).

Plaintiffs seek to represent a nationwide class for state law Counts I (implied warranty of merchantability), V (fraud), and VI (unjust enrichment). Compl., ¶¶ 70, 111, 119. These nationwide class claims must be dismissed because Plaintiffs, both of whom are citizens of either California or New York, lack standing to represent residents outside of these states.

### 5.      Plaintiffs Lack Article III Standing to Seek Injunctive Relief.

Plaintiffs' request for injunctive relief fails to satisfy the constitutional standing requirement of Article III because they do not allege that they will suffer future harm.

In order to seek injunctive relief, a plaintiff "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328-29 (11th Cir. 2013) quoting *Wodden v. Board of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001). *See also Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (plaintiff must show a real and immediate threat of future harm to seek injunctive relief). For a plaintiff to have standing to seek injunctive relief, "[t]here must [] be a likelihood that the complained of conduct will likely harm [the] particular plaintiff[] in the future." *Marty v. Anheuser-Busch Companies, LLC*, 43 F.Supp.3d 1333 (S.D. Fla. 2014); *see also Dapeer v. Neutrogena Corp.*, 95 F.Supp.3d 1366, 1373-74 (S.D. Fla. 2015)

Here, Plaintiffs seek "an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to immediately cease distribution and sale of the Supplements." Compl., ¶ 101. However, the Complaint is devoid of a single allegation that Plaintiffs will suffer "actual and imminent" harm. Because Plaintiffs have not alleged a threat of future harm, the request for injunctive relief must be dismissed.

### D.     The Complaint Fails to Sufficiently Plead Common Law Fraud or a Violation of California and New York Consumer Protection Statutes.

#### 1.     Plaintiffs Did Not Plead Fraud with Particularity.

Under California law, the indispensable elements of a fraud claim include: (1) misrepresentation (such as false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damages. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

Here, Plaintiffs fail to allege that they saw the statements they claim are misleading, where they saw them, under what circumstances, or how they affected Plaintiffs' purchasing decision. Plaintiffs generally allege that they "purchased and used Defendant's supplements based on the

understanding that the supplements were lawfully sold and did not contain illegal and unsafe stimulants." Compl., ¶¶ 11-12. These allegations are insufficient for at least two reasons.

First, these vague allegations are nowhere close to the specificity required under Fed. R. Civ. P. 9(b) of the "who, what, when, where, and how" of the alleged misrepresentation. Nowhere is it alleged that Plaintiffs read Defendant's alleged "false and misleading advertising." *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *8 (N.D. Cal. Mar. 14, 2017) ("In the absence of any allegations that Plaintiff[] encountered a representation made by Defendant--let alone what those representations were, when they were made, and why they were false--Plaintiff[] [has] failed to plead with particularity any affirmative misrepresentation claim."). Indeed, Cavolo does not even allege *when* he viewed Blackstone's label and/or purchased Dust X, and does not allege the website *where* he viewed and/or purchased the product. Compl., ¶ 12.

Second, to the extent Plaintiffs actually encountered the alleged "false and misleading advertising," Plaintiffs do not allege that any statements made by Defendant about the Supplements are false, much less why any of them are false. *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *4 (N.D. Cal. Mar. 15, 2016); *Bouyer v. Countrywide Bank, FSB*, No. C 08-5583 PJH, 2009 WL 799398, at *2 (N.D. Cal. Mar. 24, 2009) (dismissing plaintiffs' fraud claim for failure to plead facts regarding "how any misrepresentation was false or misleading, how it induced reliance, or how it was material").

This is not a case about affirmative misstatements—such as claims that a product is "All Natural" "Contains 0% Fat" or "100% Pomegranate Juice." Rather, Plaintiffs' sole assertion is that the supplements *truthfully* listed the ingredients but did not announce the purported "illegality" of DMHA under the FDCA. Plaintiffs' fraud-by-omission claim cannot stand because the Complaint is bereft of every required allegation of fact to establish fraud. Instead, the allegations in the

14

Complaint are mere formulaic recitations of the elements of fraud—but there is no factual context to the claims, other than the unsupported assumption that DMHA is "illegal."

Similarly, Plaintiffs' vague allegations that "[t]he false and misleading representations and omissions were made by Defendant, upon which Plaintiffs and members of the Class and California and New York Subclasses reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and Class members to purchase the Supplements" (Compl., ¶ 117) does not meet Rule 9(b)'s heightened pleading requirement. Because Plaintiffs have failed to sufficiently allege justifiable reliance, Plaintiffs' common law fraud claim must be dismissed.

### 2. Plaintiffs' UCL, CLRA and NY Consumer Fraud Claims Are Not Sufficiently Pled.

Plaintiffs' UCL and CLRA claims allege that Defendant "leveraged its omissions and deception to induce Plaintiff Quidera and the members of the California subclass to purchase the Supplements, which were of different characteristics, value, and/or quality than advertised." By "failing to inform consumers that the Supplements are not, in fact, 'dietary supplements' because they contain an unsafe food additive and a non-dietary ingredient, DMHA. Compl. ¶¶ 87, 99. Thus, Plaintiffs' UCL and CLRA claims are grounded in Blackstone's allegedly fraudulent conduct in concealing material facts regarding the supplements, and Rule 9(b)'s heightened pleading standard applies. *Kearns*, 567 F.3d at 1125 ("Rule 9(b)'s heightened pleading standard applies to claims for violations of the CLRA and UCL."). Like their common law fraud claim, Plaintiffs' UCL and CLRA claims fail to meet Rule 9(b)'s heightened pleading standard.

### a. Plaintiffs Fail to Plausibly Allege That the Labels on the Supplements Are False, Deceptive, or Misleading.

Plaintiffs' UCL, CLRA, and NY Consumer Fraud (NY G.B.L. § 349) claims (Counts II-IV) are premised on the allegation that Blackstone falsely and misleadingly labeled the Supplements as "Dietary Supplements." However, as discussed elsewhere herein, this assertion is incorrect because

Plaintiffs have not sufficiently alleged that using the words "Dietary Supplement" on the Supplements' labels is false, deceptive, or misleading.

Plaintiffs' misrepresentation-based UCL and CLRA claims also violate Rule 9(b)'s particularity pleading standard. *In re iPhone 4S Consumer Litig.*, 637 F. App'x 414, 415 (9th Cir. 2016). Here, Plaintiffs have only alleged that Backstone "leveraged its omissions and deception (in failing to inform consumers that the Supplements contained an illegal and unsafe ingredient) to induce Plaintiff Quidera and the members of the California Subclass to purchase the Supplements, which were of different characteristics, value, and/or quality than advertised" Compl., ¶ 99. But they "provide no details of the alleged fraud." *Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1289 (C.D. Cal. 2008). Missing from the Complaint is any allegation of ultimate fact that Plaintiffs actually read the Product labels and thus there is no plausible allegation they were "deceived."

Claims under the UCL, CLRA, and N.Y. G.B.L. § 349 are governed by the "reasonable consumer" test. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) ("To determine whether the act is misleading or deceptive, the act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'") (citation omitted). To meet this standard in putative class actions challenging food labeling, a plaintiff must plausibly allege facts that make it probable that a "significant portion of the consuming public" could be misled by those labels. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). Plaintiffs cannot meet the "reasonable consumer" test for these statutory claims. Plaintiffs allege that the "dietary supplements" statement on the Supplements' labels misleads consumers because "the Supplements are not, in fact, 'dietary supplements' because they contain an unsafe food additive and a non-dietary ingredient, DMHA." Compl., ¶ 87. Yet, the language that Plaintiffs challenge, the phrase "dietary supplement," merely describes the Supplements truthfully

and accurately and so is not actionable. *See, e.g., Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1103 (N.D. Cal. 2012) ("The statement [gluten free] is objectively true and communicates nothing more than the absence of gluten in the product."). Plaintiffs identify no language on the labels of the Supplements that would mislead a "reasonable consumer" in the idiosyncratic manner suggested. Plaintiffs have stated no claims for affirmative misrepresentation under the CLRA, the fraudulent prong of the UCL, or N.Y. G.B.L. § 349.

### b.  Plaintiffs Fail to Allege an Actionable Omission.

"For an omission to be actionable under the CLRA and UCL, the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1134 (N.D. Cal. 2013) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835-51 (2006)). A duty to disclose arises: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Id.* "Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007). "This is because a consumer is not 'likely to be deceived' by the omission of a fact that was not required to be disclosed in the first place." *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 985-88 (2008).

Plaintiffs have not plausibly alleged any facts that demonstrate that Blackstone had to disclose "the true nature of the Supplements" to Plaintiffs. Instead, Plaintiffs try to manufacture a duty by alleging that Blackstone was in a superior position to know the "true nature" about the Supplements. Compl., ¶ 112. But superior knowledge regarding a product alone does not create a legal duty to disclose. *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1990) (finding

that the duty to disclose facts arises if a person undertakes to speak, so the speaker is bound not only to tell the truth but also not to suppress or conceal facts within speaker's knowledge that materially qualify those stated). Because the language of the label on the Supplements is sufficiently clear and accurate, using the term "Dietary Supplement" is not conduct that is "likely to deceive" consumers. More to the point, the factual allegations do not support the creation of an affirmative duty to make the specific disclosures sought by Plaintiffs.

### c. Plaintiffs Failed to Allege Any "Unfair" Acts.

Plaintiffs vaguely allege that Blackstone's purported conduct is "unfair" within the meaning of the UCL, but the Complaint is devoid of factual allegations on the subject. Although the UCL does not define the term "unfair," California courts have developed at least two tests for "unfairness" within the statute: "(1) the tethering test, which requires that the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions, . . . and (2) the balancing test, which examines whether the challenged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . ." *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145-46 (N.D. Cal. 2013).

Under the first test, Plaintiffs must allege that Blackstone's purported conduct violated a public policy that is "tethered" to specific constitutional, regulatory, or statutory provisions. *Id.* This "tethering" is necessary because "[c]ourts may not simply impose their own notions of the day as to what is fair or unfair." *Cel-Tech Comm'n, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 182, 185 (1999). Plaintiffs do not base their claim under the unfair prong on any public policy.

The second test "examines whether the challenged business practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh

the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'"

*Herskowitz*, 940 F. Supp. 2d at 1145-46 (citing *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010)) (citation and internal quotation marks omitted). Under this test, courts weigh the benefit of an alleged practice against the harm it causes to consumers. *See Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, No. 17-CV-03805-LHK, 2018 WL 1805516, at *13 (N.D. Cal. Apr. 16, 2018).

Plaintiffs make conclusory allegations that Blackstone's conduct constitutes unfair business practices but references no established public policy that Blackstone's actions have violated. Plaintiffs have identified no conduct by Blackstone that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and has failed to adequately allege any "unfair" business practice by Blackstone under Rule 9(b). *Palmer v. Apple Inc.*, No. 5:15-CV-05808-RMW, 2016 WL 1535087, at *7 (N.D. Cal. Apr. 15, 2016).

**E.** **Plaintiffs' Breach of the Implied Warranty of Merchantability Claims Fail.**

California implied warranty law requires that "a plaintiff asserting a claim for breach of the implied warranty must ... stand in vertical contractual privity with the defendant." *Martin v. Tradewinds Beverage Co.*, 2017 WL 1712533, at *11 (C.D. Cal. Apr. 27, 2017) (citing *Clemens v. Daimler*, 534 F.3d 1017, 1023 (9th Cir. 2008)); *see also Paramount Farms Intern. LLC v. Ventilex B.V.*, 500 Fed. Appx. 586, 588 (9th Cir. 2012) ("Vertical privity ... is required to sustain an implied warranty claim in California."). Similarly, "New York law allows claims of implied warranty to be brought only by those in privity with the named defendant." *Cummings v. FCA US, LLC*, 401 F.Supp.3d 288, 309-10 (N.D.N.Y. 2019) (citing *Jackson v. Eddy's LI RV Center, Inc.*, 845 F.Supp.2d 523, 530 (E.D.N.Y. 2012)); *see also Hesse v. Godiva Chocolatier, Inc.*, 2020 WL 2793014, at *9 (S.D.N.Y. 2020) (vertical privity required under both California and New York implied warranty law). Plaintiffs have not plausibly alleged privity between themselves and Blackstone. Quidera

alleges that he purchased the product from retailer Athlete's Nutrition, Doc. 1 at ¶ 11, and Cavolo simply alleges that he purchased the product "online from his residence," *id.* at ¶ 12. Plaintiff's claims for breach of implied warranty must, therefore, be dismissed.

### F. Plaintiffs' Unjust Enrichment Claims Fail.

Under California law, unjust enrichment does not exist as a separate cause of action. *See, e.g., Yordy v. Plimus, Inc.*, No. C12-0229 TEH, 2012 WL 2196128, at *7 (N.D. Cal. June 14, 2012); *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1028 (N.D. Cal. 2011). Instead, unjust enrichment is "just a restitution claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (collecting cases). Because unjust enrichment is not recognized as an independent cause of action in California, the claim must be dismissed with prejudice. *Id.*

Relatedly, "under New York law, an unjust enrichment claim is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Buonasera*, 208 F. Supp. 3d at 567. Where, as here, "the plaintiff is simply restating a contract or tort claim, then unjust enrichment is not available" the claim must be dismissed. *Id.*

## IV. CONCLUSION

Blackstone respectfully requests this Court grant its motion and dismiss Plaintiffs' Complaint. Alternatively, if this Court declines to grant Blackstone's motion to dismiss, Blackstone respectfully requests that it strike the nationwide class allegations.

## V. REQUEST FOR ORAL ARGUMENT

Due to the complex and technical matters addressed in this motion, Defendant requests that this Court set the matter for oral argument.

Respectfully Submitted this 30th day of July 2020.

**CERTIFICATE OF SERVICE**

I Certify that on July 30, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronic Notices of Electronic Filing.

By:     */Zachary L. Catanzaro/*
          **Zachary L. Catanzaro**
          Fla. Bar No. 98902
          **Law Office of Zachary L. Catanzaro, PA**
          7999 N. Federal Highway, Suite 401
          Boca Raton, Florida 33487
          Tel.:    561-247-3242
          zachary@zlclaw.com
          *Counsel for Defendant Blackstone Labs, LLC*


          */Arthur W. Leach/*
          Arthur W. Leach, Esq.
          art@arthurwleach.com
          **Law Office of Arthur Leach**
          5780 Windward Parkway, Suite 225
          Alpharetta, GA 30005
          Tel.: 404-786-6443
          *Counsel for Defendant Blackstone Labs, LLC*
          *(pro hac vice* pending)