UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-80898-DIMITROULEAS

EDWARD QUIDERA and JEREMY CAVOLO,
Individually and on behalf of others similarly situated,

    Plaintiffs,

vs.

BLACKSTONE LABS, LLC,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Blackstone Labs LLC ("Defendant" or "Blackstone")'s Motion to Dismiss [DE 14] ("Motion"). The Court has carefully considered the Motion, Plaintiff's Response [DE 19], Defendant's Reply [DE 25], and the record in this case, and is otherwise advised in the premises. For the reasons stated herein, the Court will grant the Motion.

**I.   BACKGROUND**

Blackstone is a Florida limited liability company. [DE 1] at ¶ 13. Blackstone distributes and sells dietary supplements throughout the United States. ¶ 13.  Blackstone distributed and sold Dust X and Arson supplements containing the stimulant DMHA. ¶ 1.

Plaintiff Edward Quidera ("Quidera") is a citizen of California.  ¶ 11. Quidera purchased Dust X for personal use from retailer Athlete's Nutrition in California in the summer of 2018, paying approximately $45. ¶ 11.

Plaintiff Jeremy Cavolo ("Cavolo") is a citizen of New York. ¶ 13. Cavolo purchased the Dust X supplements for personal use online from his residence in New York on several occasions for approximately $35-45. ¶ 13.

In this action, Plaintiffs Quidera and Cavolo seek to bring a class action lawsuit on behalf of purchasers of Blackstone's Dust X supplements, which were purchased by Plaintiffs, as well as on behalf of purchasers of Blackstone's Arson Supplement, which neither Plaintiff purchased. [DE 1] at ¶¶ 1, 11, 13.

Plaintiffs allege that:

> DMHA is illegal, is not generally recognized among experts to be safe under the conditions of its intended use, and that Defendant is breaking the law by manufacturing and distributing supplements containing the stimulant DMHA and failing to disclose that they contain an ingredient that is illegal and not generally recognized as safe.

*See* [DE 1] at ¶ 2. On April 10, 2019, the FDA sent a warning letter to one of Defendant's owners, Jared Wheat, regarding the use of the DMHA ingredient in his products. ¶ 8.

Plaintiffs seek damages and disgorgement of profits, as well as injunctive relief, on behalf of themselves and a putative class of all persons in the United States who purchased the Supplements, as well as all persons who purchased the Supplements in Florida and all persons who purchased the Supplements in California. *See* [DE 1] at p. 26.

Plaintiff's allegation that DMHA is an illegal and unsafe ingredient and forms the basis of each of the six counts asserted in the Complaint. *See* Count I: Breach of Implied Warranty of Merchantability (on behalf of a Nationwide Class) at ¶ 72 ("The Supplements contain DMHA, which is illegal and unsafe."); Count II: Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.* (on behalf of a California Subclass) at ¶ 87 ("Defendant has violated the CLRA by marketing the Supplements as dietary supplements but

failing to inform consumers that the Supplements are not, in fact, "Dietary Supplements" because they contain an unsafe food additive and a non-dietary ingredient, DMHA. Defendant also failed to inform consumers that DMHA is not generally recognized as safe and is illegal."); Count III:  Violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.* (on behalf of a California Subclass) at ¶94 ("Defendant's sales of Supplements containing DMHA, an illegal and unsafe ingredient, constitute 'unlawful' business acts and practices in that they violate the FDCA, as amended by DSHEA, and implementing regulations"); Count IV:  Violation of New York General Business Law § 349 (on behalf of a New York Subclass) at ¶ 104 ("By marketing and distributing the Supplements as 'dietary supplements' and failing to inform consumers that they contained an illegal and unsafe ingredient, Defendant engaged in deceptive acts and practices by falsely and misleadingly marketing its Supplements to consumers"); Count V:  Fraud (on behalf of a Nationwide Class) at ¶112 ("Defendant failed to disclose to Class members the true nature of, illegality of, and danger associated with, DMHA") and ¶113 ("[Defendant] knows that DMHA is in fact an illegal stimulant and an unsafe food additive."); and Count VI: Unjust Enrichment (on behalf of a Nationwide Class) at ¶122 ("The Supplements contain DMHA, an illegal and unsafe ingredient.").

     Defendant has moved to dismiss the Complaint on several grounds.  *See* [DE 14].  First, Defendant argues that Plaintiff's claims regarding Defendant's dietary supplements are precluded because the United States Food and Drug Administration (the "FDA") has primary jurisdiction, the FDA has not deemed DMHA illegal, and Plaintiffs' claims for relief, if valid, would usurp the FDA's authority to regulate dietary supplements under the Federal Food, Drug, and Cosmetic Act ("FDCA") 21 U.S.C. § 393(b)(2) and the Dietary Supplement Health and

Education Act ("DSHEA"), Pub. L. No, 103-417, 108 Stat. 4325.  Second, Defendant contends that Plaintiff's claims are preempted by federal law, specifically by the FDCA and DSHEA, as Plaintiffs do not claim that they were injured or suffered any ill effects as a result of ingesting any of Defendant's products, but rather, their claims are premised on Defendant's alleged violation of the FDCA and DSHEA.   Finally, Defendant maintains that Plaintiffs' claims also fail because they lack standing, have not suffered an injury in fact, and because Plaintiffs have failed to sufficiently plead either common law fraud or a violation of the California or New York consumer protection statutes.

## II. LEGAL STANDARD

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556).

The Court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"

*Twombly*, 550 U.S. at 583, 588 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984)).

### III. DISCUSSION

Although Defendant has asserted multiple bases for dismissal, the Court will focus its discussion on the application of the primary jurisdiction doctrine to this matter. The Court finds that this is an independent and sufficient ground for dismissing the Complaint.

Defendant argues that the case should be dismissed under the primary jurisdiction doctrine, which applies where a plaintiff's claims implicate a federal agency's expertise for a regulated product. *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956) (primary jurisdiction doctrine applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body"); *see also Greenfield v. Yucutan Foods, L.P.*, 18 F. Supp. 3d 1371, 1375 (S.D. Fla. 2014) ("The primary jurisdiction doctrine applies where a case implicates a federal agency's expertise with a regulated product.").

The primary jurisdiction doctrine advances two central purposes "(1) the expertise of the agency deferred to; and (2) the need for uniform interpretation of a statute or regulation." *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000).

> Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the action[ ] by an administrative agency." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 n.3 (11th Cir. 2001) (*quoting Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1998)). The doctrine "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. Western Pac. R. Co.*, 352 U.S. 59, 64 (1956). Primary jurisdiction "is a flexible doctrine to be applied at the discretion of the district court." *Wagner*, 837 F.2d at 201.

*Fla. Power & Light Co. v. Bellsouth Telecommunications, LLC*, No. 9:19-CV-81043, 2020 WL

3118312, at *4 (S.D. Fla. Mar. 12, 2020).

> Courts consider four factors when applying the primary jurisdiction doctrine: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration. The four factors are not exclusive and courts seem heavily influenced by a fifth factor in cases implicating FDA jurisdiction: whether the FDA has shown any interest in the issues presented by the litigants.

*Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297, 1307–08 (S.D. Fla. 2020) (citation omitted).

A nearly identical class action complaint by purchasers of dietary supplements containing the same ingredient at issue here – DMHA – was recently dismissed on primary jurisdiction grounds by a federal district court in the Central District of California. *See Rosas v. Hi-Tech Pharm.*, No. CV 20-00433-DOC-DFM, 2020 WL 5361878 (C.D. Cal. July 29, 2020). The Court has carefully considered that opinion and concludes that its reasoning is also applicable here. All five non-exhaustive factors courts consider when applying the primary jurisdiction doctrine weigh in strong favor of the doctrine's application. *See Snyder*, 430 F. Supp. 3d at 1307–08. The FDA has expressed interest in DMHA but has not taken final agency action to determine whether DMHA is a dietary ingredient, whether it is safe for human consumption and/or whether it is illegal. *See Hi-Tech Pharm., Inc. v. Hahn*, No. CV 19-1268 (RBW), 2020 WL 3498588, at *5 (D.D.C. June 29, 2020) (agreeing with the FDA that the FDA Warning Letter regarding DMHA does not constitute final agency action regarding DMHA and therefore dismissing claims against the FDA upon the court's ripeness inquiry). Furthermore, the analysis of whether DMHA constitutes a dietary supplement involves the evaluation of conflicting scientific evidence in the complex areas of product and ingredient classification and "requires the 'determination of technical and scientific questions' best left to the FDA." *Rosas*, 2020 WL 5361878, at *5

(quoting *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1377 (9th Cir. 1983) (quoting *Weinberger v. Bentex Pharmaceuticals, Inc.*, 412 U.S. 645, 654 (1973)). *See, e.g., Aaronson v. Vital Pharm., Inc.*, No. 09-CV-1333 W (CAB), 2010 WL 625337, at *2 (S.D. Cal. Feb. 17, 2010) ("These allegations make clear that in order to evaluate Aaronson's first two causes of action, the Court will likely need to evaluate conflicting studies and determine whether Redline and/or it's ingredients should be approved as safe. . . Because Redline is already on the market, the DSHEA makes the FDA responsible for its regulation. Accordingly, the FDA has both the expertise and the authority to determine whether Redline is safe, and the Court believes the FDA is in the better position to make that determination."); *Braintree Labs., Inc. v. Nephro-Tech, Inc.*, No. 96-2459-JWL, 1997 WL 94237, at *7 (D. Kan. Feb. 26, 1997) (dismissing in deference to the FDA, ruling that "it is not for this court to interpret and apply the statutory definition of 'dietary supplement'"). Determining based on science whether DMHA is safe or properly classified as a new dietary ingredient is "a particularly complicated issue that Congress has committed to a regulatory agency," here the FDA. *See Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1380 (S.D. Fla. 2014). This type of weighing extensive chemical, technical and scientific analysis is readily distinct from whether courts can adjudicate claims regarding the use of "natural" in food labeling without the expertise of the FDA. *See, e.g., Krzykwa v. Campbell Soup Co.*, 946 F. Supp. 2d 1370, 1374 (S.D. Fla. 2013) (declining to dismiss a "natural" food labeling claim under the primary jurisdiction doctrine). Moreover, the Court agrees with the *Rosas* opinion that various district courts proceeding with their own interpretation of whether DMHA constitutes a dietary supplement under DSHEA, and possibly having different interpretations and different conclusions from that of other courts, would create problems with uniformity in administration and inconsistent product regulation, which the primary jurisdiction doctrine aims to avoid.

Based on the foregoing, the Court agrees with Defendant that Plaintiff's claims regarding Defendant's dietary supplements are precluded because the FDA has primary jurisdiction, the FDA has not deemed DMHA illegal, and Plaintiffs' claims for relief, if valid, would usurp the FDA's authority to regulate dietary supplements under the FDCA and the DSHEA.  Plaintiffs' Complaint falls within the primary jurisdiction of the FDA.  Accordingly, the Court will grant Defendant's Motion to Dismiss.

## IV. CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [DE 14] is **GRANTED**;
2. Plaintiff's Complaint [DE 1] is **DISMISSED** without prejudice pursuant to the primary jurisdiction doctrine.
3. The Clerk of Court is directed to **CLOSE** this case and **DENY as moot** all pending motions.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 5th day of March, 2021.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:
Counsel of record